UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

| | |
|---|---|
| Tryp Hotels Worldwide, Inc., | Civil Action No. |
| *Plaintiff,* | 21-11557(MEF)(JSA) |
| v. | |
| Sebastian Hotel, LLC, et al., | OPINION and ORDER |
| *Defendants.* | |

### Table of Contents

I.    Background
      A.    Facts
      B.    Procedural History
      C.    The Motion
      D.    The Court's Approach
II.   Legal Principles
      A.    Summary Judgment
      B.    Choice of Law
III.  The Defendants' Counterclaims
      A.    The First Set of Counterclaims
            1.    "Fit"
            2.    Growth
            3.    Omitted Information
            4.    Conclusion
      B.    The Second Set of Counterclaims
            1.    Reservation System
                  a.    The Release

             b.   The Merits

        2.   Rewards Program

        3.   Marketing

        4.   Conclusion

IV.  Breach of Contract

    A.   Franchise Agreement

    B.   Guaranty

    C.   Note

V.   Damages

    A.   Fees

    B.   Note

    C.   Liquidated Damages

    D.   Prejudgment Interest

VI.  Attorneys' Fees

VII. Conclusion

\*     \*     \*

A hotel franchisor and a hotel owner entered into a franchise agreement.  An individual guaranteed the agreement.

The hotel owner terminated the franchise agreement.

The franchisor then sued the hotel owner and the guarantor, mainly for breach of the franchise agreement.

The franchisor has now moved for summary judgement.

The motion is granted in part.

\*     \*     \*

I.   **Background**

   A.   **Facts**

During late 2016, a hotel franchisor[1] and a hotel owner[2] entered into two agreements.

The <u>first</u> was a franchise agreement.  <u>See</u> Affidavit of Kendra Mallett in Support of Plaintiff's Motion for Summary Judgement and to Dismiss Defendants' Counterclaim (May 15, 2023) ("Mallet Affidavit"), Exhibit A ("Franchise Agreement").

Attached to the franchise agreement was a guaranty.  <u>See</u> Mallett Affidavit, Exhibit B ("Guaranty").  The guarantor was an individual.[3]  <u>See id</u>.  Under the guaranty, if the hotel owner did not fulfill certain obligations under the franchise agreement, the guarantor had to fulfill them.  <u>See id</u>.

The <u>second</u> agreement was a note.  <u>See</u> Mallett Affidavit, Exhibit C ("Note").  It set the repayment terms for a loan that had been made by the hotel franchisor.  <u>See id</u>. at 1.  Under the note, the hotel owner and the guarantor had to pay the hotel franchisor when a certain hotel was opened.  <u>See id</u>.

Early in 2021, the hotel owner's attorney wrote a letter to the hotel franchisor.  The letter read, in part: "[the] franchise agreement . . . is hereby terminated."  <u>See</u> Mallett Affidavit, Exhibit F at 1.

   B.   **Procedural History**

Soon after receiving the above-referenced letter, the hotel franchisor sued the hotel owner and the guarantor.

From here, the hotel franchisor is referred to as "the Plaintiff" or "the Hotel Franchisor."[4]  The hotel owner is referred to as "the Corporate Defendant" or "the Hotel Owner."[5]  The guarantor is referred to as "the Individual Defendant" or

---

[1]  Tryp Hotels Worldwide, Inc.

[2]  Sebastian Hotel, LLC.  The managing member of Sebastian Hotel, LLC was Alexander Samardzich.

[3]  Alexander Samardzich.

[4]  The Plaintiff/Hotel Franchisor is Tryp Hotels Worldwide, Inc.

[5]  The Corporate Defendant/Hotel Owner is Sebastian Hotel, LLC.

"the Guarantor."[6]  Together, the Corporate Defendant and the Individual Defendant are referred to as "the Defendants."

The main basis of the lawsuit: the franchise agreement was breached and the Plaintiff is therefore entitled to damages. See Complaint ¶¶ 33-37, 44-46, 52-54, 56-58.

The Defendants' core response is in two parts, each framed as a set of counterclaims.

The first set of counterclaims: the Plaintiff's claim for breach of the franchise agreement fails because the Hotel Owner was wrongly induced to enter the agreement, and it is therefore void.  See Answer and Counterclaim, Counterclaim ¶¶ 40-45, 48-50.

The second set of counterclaims: the Plaintiff's claim for breach of the franchise agreement fails because the Plaintiff breached the agreement before the Hotel Owner did.  See id. at ¶¶ 36-38.

### C.  **The Motion**

Discovery is complete, and the Plaintiff now moves for summary judgement as to: (a) the two sets of counterclaims sketched out above; (b) the Defendants' liability for breach of the franchise agreement, plus breach of the guaranty and the note; (c) damages for these breaches; and (d) attorneys' fees.  See Motion for Summary Judgement at 5-6, 9, 15-16.

The motion is before the Court.  It is granted in part.

### D.  **The Court's Approach**

The Court first lays out the general legal principles that govern here.  See Part II.

Next, the Court analyzes the Defendants' two sets of counterclaims.  As noted, these are the Defendants' main response to the Plaintiff's claim for breach of the franchise agreement.  The Court's conclusion: the Plaintiff is entitled to summary judgment on the counterclaims.  See Part III.

The Court then takes up the Plaintiff's motion for summary judgment as to breach of the various contracts here --- the franchise agreement, plus the guaranty and the note.

---

[6]  The Individual Defendant/Guarantor is Alexander Samardzich.

As to liability, see Part IV, the Court concludes the Plaintiff's motion must be granted.

As to damages, see Part V, the Court concludes factual disputes preclude summary judgment.

As to attorneys' fees, see Part VI, the Court holds that issue is not ripe for decision.

## II.   Legal Principles

### A.   Summary Judgment

A motion for summary judgement should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Dupree v. Younger, 598 U.S. 729, 737 (2023); Cellco P'ship v. White Deer Twp. Zoning Hearing Bd., 74 F.4th 96, 100 (3d Cir. 2023).

"A factual dispute is material if it might affect the outcome of the suit under the governing law." Canada v. Samuel Grossi & Sons, Inc., 49 F.4th 340, 345 (3d Cir. 2022) (cleaned up); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Such a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party[.]" SodexoMAGIC, LLC v. Drexel Univ., 24 F.4th 183, 203-204 (3d Cir. 2022).

In assessing a summary judgment motion, "a district court may not make credibility determinations or engage in any weighing of the evidence[.]" Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004). Rather, the court must "view the facts in the light most favorable to the non-moving party and [draw] all reasonable inferences in that party's favor." Canada, 49 F.4th at 345 (cleaned up); accord Tolan v. Cotton, 572 U.S. 650, 660 (2014).

### B.   Choice of Law

New Jersey law applies here.

The parties' briefs assume throughout that New Jersey law governs. And with good reason: the franchise agreement, the note, and the guaranty each say they are controlled by New Jersey law. See Franchise Agreement § 17.6.1; Note at 2; Guaranty at 1; see generally Instructional Sys., Inc. v. Computer Curriculum Corp., 130 N.J. 324, 341 (1992)

("Ordinarily, when parties to a contract have agreed to be governed by the laws of a particular state, New Jersey courts will uphold the contractual choice.");[7] cf. Smith v. Citimortgage, Inc., 2023 WL 7619155, at *3 (D.N.J. Nov. 14, 2023) (noting that legal briefs' assumption that New Jersey law governs supports application of New Jersey law).

## III.  The Defendants' Counterclaims

The Defendants contend that the Plaintiff's claim for breach of the franchise agreement, see Complaint ¶¶ 32-37, cannot be sustained.

First, the Defendants counterclaim, see Answer & Counterclaim, Counterclaim, ¶¶ 40-45, 48-50, the franchise agreement is void. And second, the Defendants counterclaim, see id. at ¶¶ 35-38, the Plaintiff breached the franchise agreement first.

The Plaintiff has moved for summary judgment as to these counterclaims.

The motion is granted.  The Court explains why below, as to the first set of counterclaims, see Part III.A, and then the second, see Part III.B.

### A.   The First Set of Counterclaims

As noted, the Defendants' first set of counterclaims is that the Hotel Owner/Corporate Defendant was wrongly induced by the Hotel Franchisor/Plaintiff to enter into the franchise agreement.  See Answer and Counterclaim, Counterclaim ¶¶ 40-45, 48-50. Therefore, the argument goes, the franchise agreement is void and the Hotel Owner cannot be sued by the Hotel Franchisor for breaching it.[8]

---

[7]  Under Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941), New Jersey's choice of law rules are controlling because this is a diversity case.  See Complaint ¶ 5 (invoking the Court's jurisdiction based on the diversity statute).  One of those New Jersey rules, as noted in the text, is that the parties' contractual choice-of-law decisions are generally upheld.

[8]  A point at the outset.  The Defendants' argument that the Hotel Owner was wrongly induced to enter into the franchise agreement is the basis for two counterclaims.  One rests on the doctrine of fraudulent inducement.  See Answer and Counterclaim ¶¶ 40-45.  The other on negligent misrepresentation.  See id. at

Start the analysis with the fundamental legal principles in play.

Under New Jersey law, a party can make out a wrongful inducement claim, whether it sounds in fraudulent inducement or negligent misrepresentation, by showing, among other things: (1) that it took action in reliance on a statement from a second party, and (2) the statement was a misrepresentation --- it was false at the time it was made. See, e.g., Kaufman, 165 N.J. at 109; Gennari, 148 N.J. at 610; H. Rosenblum, 93 N.J. at 334; Walid v. Yolanda for Irene Couture, Inc., 40 A.3d 85, 90-92 (N.J. Super. Ct. App. Div. 2012); St. Anargyroi, XIX, Inc. v. Atl. Title Agency, Inc., 2012 WL 1948622, at *5-6 (N.J. Super. Ct. App. Div. May 20, 2012); Iglesia v. Tootsie Roll Indus., LLC, 2021 U.S. Dist. LEXIS 200269, at *26-27 (D.N.J. Oct. 18, 2021); Mason v. Coca-Cola Co., 774 F. Supp. 2d 699, 704 (D.N.J. 2011).

Under New Jersey law, statements of opinion, predictions, and puffery generally do not count as misrepresentations in this context. See Shtutman v. Carr, 2017 WL 4402045, at *4. (N.J. Super. Ct. App. Div. Oct. 4, 2017); Pantelopoulos v. Fort Lee Fed. Savings Bank, 2013 N.J. Super. Unpub. LEXIS 2082, at *40-41 (App. Div. Aug. 20, 2013); Suarez v. E. Int'l Coll., 50 A.3d 75, 85 (N.J. Super. Ct. App. Div. 2012); Masone v. Levine, 887 A.2d 1191, 1195 (N.J. Super. Ct. App. Div. 2005); Daibo v. Kirsch, 720 A.2d 994, 998-99 (N.J. Super. Ct. App. Div. 1998);

---

¶¶ 48-50.   There are some differences between the two doctrines. See generally Gennari v. Weichert Co. Realtors, 148 N.J. 582, 610 (1997); H. Rosenblum, Inc. v. Adler, 93 N.J. 324, 334 (1983) superseded by statute on other grounds; McMullin v. Casaburi, 2018 WL 3673256, at *2-4 (N.J. Super. Ct. App. Div. Aug. 3, 2018).  But those differences do not matter here.  This is because both doctrines require that a party was induced to do something by a misrepresentation. See Union Ink. Co., Inc. v. AT&T Corp., 801 A.2d 361, 379 (N.J. Super. Ct. App. Div. 2022) ("Incorrect statement and misstatement of fact are elements of both . . . fraud and negligent misrepresentation"); 48 Horsehill, LLC v. Kenro Corp., 2006 WL 349739, at *9 (N.J. Super. Ct. App. Div. Feb. 22, 2006) (fraud and negligent misrepresentation "both require 'the plaintiff to have received or relied on any of the alleged misstatements'") (quoting Kaufman v. i-Stat Corp., 165 N.J. 94, 109 (2000)) (cleaned up). And the Court concludes below that no misrepresentation was made here.  The Court's description of the law in the text that follows this footnote covers the area of overlap between the two doctrines, and ignores the differences between them because those are not relevant to the resolution of this motion.

Prometheus Innovation Corp. v. Huntington Learning Cts., Inc., 2022 N.J. Super. Unpub. LEXIS 2030, at *8-9 (Nov. 2, 2022); Alexander v. CIGNA Corp., 991 F. Supp. 427, 435 (D.N.J. 1998).

Here, the relevant counterclaims, see Answer & Counterclaim ¶¶ 40-45, 48-50, allege that the Hotel Owner was induced to enter the franchise agreement based on misrepresentations made by the Hotel Franchisor --- and therefore the franchise agreement is void and the Hotel Franchisor cannot sue for breach of it.

Three misrepresentations are alleged.

Take them below, each in turn.

### 1.   "Fit"

First, the Defendants contend that before the Hotel Owner signed the franchise agreement, one of the Hotel Franchisor's employees suggested the Franchisor's brand would be a good "fit" for the hotel, even though the employee "knew. . . it wasn't[.]" Memorandum in Opposition at 10, 21, 23-24.

The Hotel Franchisor's employee emphasized "fit" as a selling point. See Brewster Certification, Exhibit B, Casper Deposition 39:12-14 ("Casper Depo.") (an employee of the Hotel Franchisor told an employee of the Hotel Owner that she "felt [the Hotel Franchisor's brand] would be a better fit for the hotel.").[9]

But this does not suggest improper inducement, for two reasons.

First, future predictions --- for example, about how close the "fit" might ultimately prove to be between the Hotel

---

[9]  The Hotel Franchisor's employee's statement is oral, but it may be considered here, even though the franchise agreement has an "integration" clause. See Franchise Agreement § 17.7.4. This is because "it is well-settled under New Jersey law that the mere inclusion of a general statement in a contract stating that the parties relied on no oral representations will not necessarily bar the introduction of parole evidence to determine if assent was fraudulently induced and thus the contract is voidable." Baymont Franchise Sys. v. SB Hospitality, 2022 WL 2063623, at *7 (D.N.J. June 8, 2022); see also Ocean Cape Hotel Corp. v. Masefield Corp., 164 A.2d 607, 611 (N.J. Super. Ct. App. Div. 1960); Timken Silent Automatic Corp. v. Vetrovec, 119 N.J.L. 500, 503 (N.J. 1938).

Franchisor's brand and the Hotel --- cannot generally form the basis for an inducement claim under New Jersey law.[10]

---

[10]  See Pantelopoulos, 2013 N.J. Super. Unpub. LEXIS 2082, at *41-41 ("Statements as to future or contingent events, to expectations or probabilities . . . do not constitute misrepresentations, even though they may turn out to be wrong. For a statement to constitute a material misrepresentation, the statement's content must be susceptible of exact knowledge at the time it was made.") (quoting Alexander, 991 F. Supp. 427, 435); Prometheus Innovation Corp., 2022 N.J. Super. Unpub. LEXIS 2030, at *8-9 (same first sentence); Shtutman, 2017 WL 4402045, at *4 (same, and "neither expressions of opinion, nor 'puffery,' will satisfy this element of fraud. A statement is a matter of fact if it is susceptible of exact knowledge when the statement was made[.] [I]t is a matter of opinion if it is unsusceptible of proof at that time. However persuasive, an opinion that the customer is in good hands . . . is nothing more than puffery . . . . Saying a product is the best . . . is only a statement of the seller's opinion. Statements that a house is very saleable were merely opinions rather than a material representation of a presently existing or past fact. Similarly, fraud cannot be predicated on representations as to value.") (cleaned up & internal citations omitted); Suarez, 50 A.3d at 85 ("plaintiff must show the misrepresentation of a fact that exists at or before the time the representation is made. Hence, neither expressions of opinion . . . nor "puffery" . . . will satisfy this element of fraud. [The] statements regarding plaintiff's potential employment and earning capacity were not statements of present or previously existing facts and therefore cannot provide the basis for a claim based on common law fraud."); Masone, 887 A.2d at 1195 ("the plaintiff must establish that the defendant negligently made an incorrect statement of a past or existing fact"); Daibo, 720 A.2d at 999 (representations as to the value of property are opinions and not statements of fact). In this vein, note that statements that something is the "best" are generally opinions, not misrepresentations. See EP Henry Corp. v. Cambridge Pavers, Inc., 383 F. Supp. 3d 343, 350 (D.N.J. 2019) ("when [a company] represents that its products are the 'best,' or that its . . . 'Distributors are the best,' it represents the type of exaggerated statement regularly made by companies, which is unverifiable" and a matter of opinion); In re Toshiba Am. HD Mktg. & Sales Practices Litig., 2009 WL 2940081, at *9 (D.N.J. Sept. 11, 2009) ("[w]hether something is the 'best' is highly subjective, [and] is almost always a matter of opinion").

To see the second problem, note that the Defendants' core
contention is that the Hotel Franchisor's employee knew the
Franchisor's brand was not the right "fit" for the hotel when
she suggested it was.  See Memorandum in Opposition at 10, 21,
23-24.

But that argument is not backed up by evidence.

At her deposition, the employee testified that she thought the
hotel "seemed to fit the brand potentially" and "if we wanted it
to be a [hotel that used the Hotel Franchisor's brand], it could
be one . . . it could fit the . . . brand," because of the
structure of the rooms and modern style of the building, even
though the location was "not ideal, but not bad."  Brewster
Certification, Exhibit A, Ashton Deposition ("Ashton Depo.")
52:1-53:10.

There is nothing in this that suggests the Hotel Franchisor's
employee said something to the Hotel Owner that she did not, in
fact, believe.  The quoted statements are somewhat equivocal.
But no matter.  No one can perfectly tell the future.  A bit of
hedging can be the mark of thoughtful and good-faith prediction.
Accordingly, some hedging ("seemed," "potentially," etc.) is, by
itself, insufficient proof as a matter of law that the Hotel
Franchisor's employee was lying --- that she suggested one thing
(good fit) but thought another (bad fit).

And that is virtually[11] all that is put forward.  The Defendants
have not drawn the Court's attention to any evidence that
suggests the Hotel Franchisor's employee was not speaking
honestly.  For example, the Defendants point to no contradictory
internal emails, or to conversations between the employee and
anyone else.

In sum: (1) opinions as to the future (here, of a good "fit") do
not generally count in this context as misrepresentations, and
(2) even if they could generally count as misrepresentations,
they would not here --- because there is no evidence that the

---

[11]  The Defendants also cite an email sent by the employee to the
Guarantor.  But the email only says that the employee wanted to
discuss the potential for the hotel to be a part of the Hotel
Franchisor's brand.  See Declaration of Alexzander Samardzich,
Exhibit A.

Hotel Franchisor's employee did not believe the predictions she made.[12]

### 2.   Growth

The Defendants' second argument: the Hotel Owner was induced to sign the franchise agreement by a promise from the Hotel Franchisor that the Franchisor's brand would grow --- and this promise was false.  See Memorandum in Opposition at 10; Defendants' Supplemental Statement of Material Facts ¶ 13.

For this point, as to the period before the execution of the franchise agreement, the Defendants focus on two pieces of evidence: the Guarantor's deposition and his declaration.

In the deposition, the Guarantor testified that he was told by the Hotel Franchisor's employee that the Hotel Franchisor intended to grow the brand.  See Brewster Certification, Exhibit F, Alexander Samardzich Deposition ("Samardzich Depo.") 82:21-83:2 (Q: "So I assume it was Kate Ashton at that point in time, she made a representation that . . . it was . . . Tryp's intention to grow the brand" A: "yes"); Ashton Depo. 56:12-18 (Plaintiff's employee describing her statements, including saying the Plaintiff "wanted to increase, grow all [of our hotel] brands").

In his declaration, the Guarantor went further --- suggesting the Hotel Franchisor promised not to try to grow the brand, but rather to actually deliver growth.  "[T]hrough its various representatives, [the Plaintiff] promised to expand this

---

[12]  At one point, the Defendants also seem to suggest it was unreasonable for the Hotel Franchisor's employee to believe the hotel was a good fit because it was not located in a downtown location.  See Memorandum in Opposition at 24.  But this argument is not meaningfully developed.  It is not, for example, supported by citations to evidence or law.  It is pressed in too glancing a way to be treated as having been raised here.  See generally Walker v. Roman, 2016 WL 5934692, at *4 (D.N.J. Oct. 12, 2016) ("Once a properly supported motion for summary judgment has been made, the non-movant's burden is rigorous: he 'must point to concrete evidence in the record that supports each and every essential element of his case.'") (quoting Orsatti v. New Jersey State Police, 71 F.3d 480, 484 (3d Cir. 1995)).  More generally, the Defendants press no substantial arguments as to why it may have been negligent to make any of the complained-of statements described in Part III.A.  Instead, they focus solely on arguing the statements were knowingly false.  That is, therefore, the argument the Court addresses.

exciting new brand that was up and coming." Declaration of
Alexander Samardzich ¶ 14.

What to make of the declaration?  It is not easy to say.

If the declaration purports to rest on an increment of evidence
beyond what the Guarantor described in his deposition, then the
declaration does not say so.

And if the declaration purports to summarize what the Guarantor
said in his deposition, then the declaration is not entitled to
its own independent weight, because it is simply shorthand for
the deposition evidence.[13]

But put all this to one side, and assume for present purposes
that the Hotel Owner was induced to sign the franchise agreement
by a promise from the Hotel Franchisor that it would grow its
hotel brand, not just try to.

Still, though, on the Defendants' argument, see footnote 12,
there would need to be evidence that this promise was false when
made.  See generally Suarez, 428 N.J. Super. at 29 (the party
"must show the misrepresentation of a fact that exists at or
before the time the representation is made"); Masone, 887 A.2d
at 1195 ("the plaintiff must establish that the defendant
negligently made an incorrect statement of a past or existing
fact, [and] that the plaintiff justifiably relied on it").

But no such evidence has been put forward.

And indeed: the proof before the Court is that the number of
United States hotels bearing the Hotel Franchisor's brand grew
from three (when the 2016 agreements were signed) to six (in
2023).  See Brewster Certification, Exhibit I; Declaration of
Alexander Samardzich ¶ 14.[14]

---

[13]  And if it is shorthand, the declaration is not as accurate as
it might be.  There is a critical difference between pledging to
try to accomplish something and guaranteeing the thing will be
accomplished.  Cf. Pantelopoulos, 2013 N.J. Super. Unpub. LEXIS
2082, at *40-41; Prometheus Innovation Corp., 2022 N.J. Super.
Unpub. LEXIS 2030, at *8-9; Shtutman, 2017 WL 4402045, at *4;
Alexander, 991 F. Supp. at 434.

[14]  A move from three hotels to six hotels was not as much growth
as the Defendants wanted.  But there is no evidence the
Defendants were told something more specific --- for example,
about growth at a particular rate.  And that is part of why the
Defendants' citation to Baymont Franchise Systems, 2022 WL

\*     \*     \*

In addition to arguing they were fraudulently induced to enter
the 2016 franchise agreement, the Defendants also contend they
were thinking of leaving the agreement (seemingly around 2018[15])
but were fraudulently induced to remain in it by statements
about growth of the hotel brand.  See Memorandum in Opposition
at 23.[16]

But this argument is not persuasive.

To see why, look to the five main pieces of evidence put forward
by the Defendants in support of their argument about assertedly
false statements by the Hotel Franchisor from 2018 to the
present.  See Defendant's Supplemental Statement of Undisputed
Material Facts ¶¶ 17-20.

First, the Guarantor testified that he was told by an employee
of the Hotel Franchisor that the employee planned to grow the
brand.  See Samardzich Depo. 73:5-13.  But as noted above, there
is no evidence this was false.  There is no proof that the Hotel
Franchisor did not plan to grow the brand.  And in any event,
the brand grew.

Second, the Defendants cite an email from an employee of the
Hotel Franchisor that describes a "goal of 62% occupancy" and
says that the Hotel Franchisor's employee would "do everything
in [his] power to get us to the goal."  See Declaration of
Alexander Samardzich, Exhibit B.  But no proof is offered that
this was false --- that an occupancy goal had not in fact been

---

2063623, does not change the equation.  In that case, a motion
for summary judgement was denied because of testimony that the
plaintiff told the defendant that "bookings were going to
increase by 40-50%" and "sales will go up a lot."  Id. at *8.
Here, there were no comparably specific pledges about growth
meeting certain targets.

[15]  See Defendants' Supplemental Statements of Undisputed
Material Facts ¶ 18; Declaration of Alexander Samardzich ¶ 18;
Samardzich Depo. 73:5-10.

[16]  The Court assume for the purposes of this opinion that the
relevant inducement doctrines, fraudulent inducement and
negligent misrepresentation, can potentially void an already-
made contract based on misrepresentations that have the effect
of keeping a party in the contract.

set, or that an intense effort was not being made to achieve the goal.

Third, the Defendants cite another email, in which one of the Hotel Franchisor's employees said to the Guarantor that he and his colleagues would "try and drive results" and had not "wavered." See Declaration of Alexander Samardzich, Exhibit C. But there is, again, no evidence that this was false --- that the employee was in fact not "try[ing]," and had in fact "wavered."

Same problem with the fourth piece of evidence. In an email, one of the Hotel Franchisor's employees pledged to provide "a high level summary of the marketing calendar . . . for . . . this year." See Declaration of Alexander Samardzich, Exhibit D. But there is no evidence this was a false pledge. (Indeed, it appears the marketing plan may in fact been provided. See Brewster Certification, Exhibit C, Emanuelo Deposition 79:19-80:15; Declaration of Alexander Samardzich, Exhibit D.).

Fifth and finally, one of the Hotel Franchisor's employees responded to a request from the Guarantor to state how many hotels were "in the pipeline now." See Declaration of Alexander Samardzich, Exhibit E. The response: 20 in the United States. See id. But again: the Defendants proffer no evidence that this was false --- that there were, in fact, less than 20 hotels on deck.

*       *       *

In short: the Defendants contend the Hotel Owner was induced to enter the franchise agreement, and to stay in it, by promises made by the Hotel Franchisor as to future growth of the hotel brand. But for this to potentially void the franchise agreement, there must be evidence the promises of growth were false when made. None has been put forward. At this stage, the Defendants must "point to concrete evidence in the record that supports each essential element of a claim on which [they] will bear the burden of proof at trial." Heffron v. Adamar of N.J., Inc., 270 F. Supp. 2d 562, 575 (D.N.J. 2003) (cleaned up); see also Greco v. T-Mobile, USA, 2010 WL 4981264, at *11 (D.N.J. Dec. 1, 2010). They have not done so.[17]

---

[17] At one point, the Defendants seem to suggest it was negligent for the Hotel Franchisor to rely on a certain marketing strategy. See Memorandum in Opposition at 22, 24. But this argument is not developed. It is made with no citation to the record evidence or to the law. Cf. footnote 12.

### 3.   Omitted Information

Finally, the Defendants assert the Hotel Owner was "induced to enter the Franchise Agreement without being provided with key information."  See Memorandum in Opposition at 13.

But this comes without elaboration as to what "key information" was assertedly withheld.  The Court's best estimate, based on references in other parts of the papers, is that the "key information" was about the typical location of the Hotel Franchisor's hotels.  See id. at 24; see also Defendants' Supplemental Statement of Undisputed Material Fact ¶ 11.[18]

The Court will proceed on that basis, and assumes for present purposes that the Plaintiff said nothing about the typical locations of the Hotel Franchisor's hotels.

*       *       *

Leaving out important information can at least sometimes trigger the two relevant inducement doctrines, fraudulent inducement and negligent misrepresentation.

As to fraudulent inducement, "silence in the face of a duty to disclose" can check the box.  United Jersey Bank v. Kensey, 704 A.2d 38, 43 (N.J. Super. Ct. App. Div. 1997); see also Stawn v. Canuso, 140 N.J. 43, 50, 59 (1995) superseded by statute; Weintraub v. Krobatsch, 64 N.J. 445, 455-56 (1974).  Likewise, when there is a duty to disclose and the party withholds material information, that can constitute negligent misrepresentation.  See Strawn v. Canuso, 140 N.J. 43, 50, 59 (1995) superseded by statute; Karu v. Feldman, 119 N.J. 135, 148 (1990).

But was there a duty to disclose here?  The Defendants say yes, but do not substantially explain why.

---

[18]  The Court's hypothesis may be the wrong one.  Indeed, the only deposition testimony cited by the Defendants for this point may suggest the hotel location information was affirmatively provided to the Hotel Defendant.  See Memorandum in Opposition at 21, 23, 24 (citing Ashton Depo. 49:1-51:25); Defendants' Supplemental Statement of Undisputed Material Fact ¶ 11 (same); Ashton Depo. 52:1-11.

*     *     *

Accordingly, step back for a moment to first principles.

Whether there is a duty to disclose in a context like this one, as between parties negotiating a franchisor-franchisee agreement, is a question of New Jersey law. See Part II.B.

To answer it, "the decisions of the [New Jersey] Supreme Court are the authoritative source[.]" Spence v. Esab Grp., Inc., 623 F.3d 212, 216 (3d Cir. 2010). But as to this question, the New Jersey Supreme Court has not issued a "controlling decision[.]" Popa v. Harriet Carter Gifts, Inc., 52 F.4th 121, 125 (3d Cir. 2022); Nationwide Mut. Ins. Co. v. Buffetta, 230 F.3d 634, 637 (3d Cir. 2000).

Therefore, the Court needs to "predict" how the Supreme Court of New Jersey will resolve the issue. See Spence, 623 F.3d at 216.

To do so, the Court considers various sources. These include: intermediate state appellate court decisions, federal court interpretations of the relevant state law, opinions from other jurisdictions on the issue, and broader principles that the Supreme Court of New Jersey applies in this general area. See In re Energy Future Holdings Corp., 842 F.3d 247, 254 (3d Cir. 2016); Schulman v. Zoetis, Inc., 2023 WL 4539476, at *2, 6 (D.N.J. July 14, 2023).

Take these one at a time.

First, consider New Jersey intermediate appellate court decisions. See Schulman, 2023 WL 4539476 at *2, 6.

They have held that a duty to disclose arises in "three general classes of transactions." United Jersey Bank v. Kensey, 704 A.2d 38, 44 (N.J. Super. Ct. App. Div. 1997); see also Berman v. Gurwicz, 458 A.2d 1311 (N.J. Super. Ch. Div. 1981). The first: transactions involving fiduciary relationships, such as between an attorney and a client. See id. The second: when at least one of the parties "expressly reposes . . . a trust and confidence in the other . . . or because of the circumstances of the case, the nature of their dealings, or their position towards each other, such a trust and confidence . . . is necessarily implied." See id. (cleaned up). The third: transactions which "in their essential nature, are intrinsically fiduciary, and "necessarily call[ ] for perfect good faith and

full disclosure, without regard to any particular intention of the parties." Id. (cleaned up)(brackets in original).[19]

But an arms' length negotiation between a franchisor and an experienced franchisee --- and that is the situation here --- does not fit into any of these three categories.

Second, focus on federal court interpretations of New Jersey law.  See Schulman, 2023 WL 4539476 at *2, 6.

Courts applying New Jersey law have declined to find a duty to disclose between two businesses entering into a franchise agreement.  See Q of Hasbrouck Heights, L.L.C. v. Qdoba Restaurant Corp., 2020 WL 13828986, at *6, 6 n.12 (D.N.J. Sept. 3, 2020); Wyndam Hotels & Resorts, LLC v. NorthStar Mt. Olive, LLC, 2013 WL 1314747, at *12 (D.N.J. March 28, 2013); Katsiavrias v. Cendent Corp., 2009 WL 872172, at *4-5 (D.N.J. March 3, 2009).


Third, look to how other jurisdictions have proceeded.  See Schulman, 2023 WL 4539476 at *2, 6.

Around the country, courts have generally held there is no duty to disclose in the context of an arms-length franchisor-franchisee relationship.  See Topline Solutions, Inc. v. Sandler Sys., Inc., 2017 WL 1862445, at *34-35 (D. Md. May 8, 2017) (applying Maryland law); Long John Silver's Inc. v. Nickleson, 923 F. Supp. 2d 1004, 1021-22 (W.D. Ky. 2013) (applying Kentucky law); Brock v. Baskin Robbins, USA, Co., 2003 WL 21309428, at *3 (E.D. Tex. Jan. 17, 2003); Ahmed v. Getty Petroleum Mktg. Inc., 2003 WL 21262131, at *3 (N.Y. Sup. Ct. May 14, 2003) (applying New York law); Interim Healthcare of Ne. Ohio, Inc. v. Interim Servs., Inc., 12 F. Supp. 2d 703, 712 (N.D. Oh. 1998) (applying Ohio law); Barnes v. Burger King Corp., 932 F. Supp. 1420, 1430 (S.D. Fla. 1996) (applying Florida law); O'Neal v. Burger Chef Sys., Inc., 860 F.2d 1341, 1350 (6th Cir. 1988) (applying

---

[19]  New Jersey's approach is consistent with the approach typically taken by courts around the country.  See Restatement (Second) of Torts § 551(2)(a); 37 C.J.S. Fraud § 33 (March 2024); Dobb's Law of Torts § 682 (2d ed.); Williston on Contracts § 69:17 (4th ed.).

Tennessee law); Vaughn v. Gen. Foods Corp., 797 F.2d 1403, 1414 (7th Cir. 1986) (applying Illinois law).[20]

Fourth and finally, take general legal principles as articulated by the New Jersey Supreme Court.  See Schulman, 2023 WL 4539476 at *2, 6.

The New Jersey Supreme Court has noted that "[w]hen courts have recognized a duty to disclose information for purposes of imposing tort liability, they have focused on the course of dealings between the parties and the express contractual undertaking." Karu, 119 N.J. at 150.  In particular, the New Jersey Supreme Court has sometimes imposed a duty of disclosure when a lay person is entering into an agreement with a professional within the scope of the professional's expertise. See, e.g., President v. Jenkins, 180 N.J. 550, 568-69 (2004) (insurance agent with insured, imposing duty to disclose on insurance agent); Matthies v. Mastromonaco, 160 N.J. 26, 33-39 (1999) (physician and patient, imposing duty to disclose on physician); Strawn, 140 N.J. at 60 (developer and real estate broker with prospective buyer, imposing duty to disclose on developer and real estate broker); cf. City Check Cashing, Inc. v. Mfrs. Hanover Trust Co., 166 N.J. 49, 59-60 (2001) (noting courts sometimes impose a duty on banks dealing with, among others, customers).

But none of this suggests a duty to disclose in a case like this one.  Here, no substantial argument is made from a set of expectations that grew up from the "dealings between the parties." Karu, 119 N.J. at 150.  And there is nothing about the nature of the parties' relationship, a franchisor dealing with an experienced franchisee, that suggests that the latter cannot protect its own interests such that a duty to disclose might need to be imposed under the New Jersey Supreme Court's jurisprudence.

In short: New Jersey intermediate appellate decisions, federal court opinions applying New Jersey law, relevant cases from

---

[20]  Courts have also held there is no duty to disclose between a prospective franchisee and a franchisor.  See Rivermont Inn, Inc. v. Bass Hotels & Resorts, Inc., 113 S.W.3d 636, 641 (Ky. Ct. App. 2003) (applying Kentucky Law); America's Favorite Chicken Co. v. Cajun Enters., Inc., 130 F.3d 180, 186 (5th Cir. 1997) (applying Louisiana law); Reyes v. Atl. Richfield Co., 12 F.3d 1464, 1472 (9th Cir. 1993) (applying California law).

other jurisdictions, and New Jersey Supreme Court cases invoking relevant general propositions all point in the same direction.

Given this, the Court predicts that the New Jersey Supreme Court will hold that no duty to disclose is generally imposed on a franchisor negotiating a franchise agreement with an experienced prospective franchisee on an arms' length basis.

*       *       *

This prediction is dispositive.

The Guarantor was the managing member of the Hotel Owner, see footnote 2, had ample experience with other hotel franchises and had been involved in the hotel industry since 1993.  See Samardzich Depo. 15:10-13, 16:21-17:1-2.  And the franchise agreement underscored what was plainly the case: "the franchise relationship is an arms' length, commercial business relationship."  Franchise Agreement § 17.7.6; cf. South Broward Hosp. Dist. v. MedQuist Inc., 516 F. Supp. 2d 370, 396 (D.N.J. 2007) ("[t]he arm's length negotiation of a contract between two corporations . . . does not fall within the narrow circumstances giving rise to . . . a duty to disclose under New Jersey law").

In sum: the Plaintiff/Hotel Franchisor had no duty to disclose that its hotel brand was generally associated with the downtown areas of cities.  Therefore, the Defendants cannot persuasively argue that the franchise agreement must be voided if they were not, indeed, told this.

### 4.   Conclusion

The Defendants' first set of counterclaims is based on the idea that the Hotel Owner was wrongly induced to enter the franchise agreement --- with statements about brand fit and growth, and with omissions about hotel locations.  But these counterclaims are not viable here, and the Plaintiff/Hotel Franchisor's motion for summary judgment as to the first set of counterclaims is granted.

### B.   The Second Set of Counterclaims

Next, the Defendants counterclaim, see Answer & Counterclaim ¶¶ 36-38, the Hotel Defendant cannot be liable for breaching the franchise agreement because the Hotel Franchisor breached it first, as to promises related to (1) a reservation system, (2) a

rewards program, and (3) marketing.  See Memorandum in
Opposition at 15.

Take these one at a time.

### 1.   Reservation System

In the franchise agreement, the Hotel Franchisor promised:

> We will operate and maintain (directly or by contracting
> with an affiliate or one of more third parties) a
> computerized Reservation System or such technological
> substitute(s) as we determine, in our discretion.  During
> the Term, the Facility will participate in the Reservation
> System on an exclusive basis.

Franchise Agreement § 4.3

### a. The Release

Any counterclaim based on failure to make good on the quoted
promise was released.  Therefore, it cannot be pressed here.

The release was executed during September 2020 by the Hotel
Franchisor and the Hotel Owner.  In it, the Hotel Owner agreed
to "[r]elease" the Hotel Franchisor "from any and all liability,
claims, damages, and causes of action arising out of the . . .
administration" of the franchise agreement, "which arose and
were or could have been asserted by you before" the release was
signed on behalf of the Hotel Owner.  Mallett Affidavit, Exhibit
E at 2.[21]

The release covers any hotel reservation system counterclaim.

First, disputes about the hotel reservation system "arose"
before the release was signed.  See Casper Depo. 47:6-20, 49:5-
12.  Indeed, such disputes seem to have been fully resolved by
2018.  See id.

And second, the counterclaim falls under the release of "any and
all" "claims" and "causes of action."  See Charles A. Manganaro
Consulting Eng'rs, Inc. v. Carneys Point Twp. Sewage Auth., 781
A.2d 1116, 1118 (N.J. Super. Ct. App. Div. 2001) ("A
counterclaim is not simply a defensive pleading. It is an
affirmative effort to enforce . . . an affirmative claim.")
(cleaned up); Dept. of Transp. v. PSC Res., Inc., 387 A.2d 393,
395 (N.J. Super. Ct. 1978) ("together with original claims and

---

[21]  Neither party argues that the release is void because the
Hotel Franchisor may not have physically signed it.

crossclaims, a counterclaim is considered to be a 'statement of a cause of action.'") (quoting Kelleher v. Lozzi, 7 N.J. 17, 22 (1951)); Jonathon H. v. The Souderton Area Sch. Dist., 562 F.3d 527, 529-30 (3d Cir. 2009) ("a counterclaim is a 'claim for relief asserted against an opposing party after an original claim has been made'") (quoting Black's Law Dictionary 353 (8th ed. 2004)); United Food Imps., Inc. v. Baroody Imps., Inc., 2010 WL 1382342, at *3 (D.N.J. Apr. 6, 2010) ("A counterclaim is essentially its own action. To bring a claim, a party must have standing to sue.").

Against this conclusion, the Defendants offer one counter-argument: that the release is not valid because the Hotel Franchisor wrongly induced the Hotel Owner to enter into the franchise agreement. See Memorandum in Opposition at 24.

But as noted above, see Part III.A.1, the inducement argument does not have a meaningful basis in the evidence. And in any event, the Defendants point to nothing in the record that suggests that assertedly improper conduct by the Hotel Franchisor in 2016 (such as saying the hotel brand would be a good "fit") induced the execution of the release in 2020.

### b. The Merits

There is a second problem with the hotel reservation system counterclaim.

To see it, start with the fundamental principle that upon a material breach of a contract "the injured party has a genuine election offered him of continuing performance or of ceasing to perform, and any action indicating an intention to perform will operate as a conclusive choice, not indeed depriving him of a right of action for the breach which has already taken place, but depriving him of any excuse for ceasing performance on his own part." Frank Stamato & Co. v. Borough of Lodi, 4 N.J. 14, 21 (1950) (cleaned up).[22]

---

[22] See also MyCWHome, LLC v. White, 2019 WL 5418356, at *5 (N.J. Super. Ct. App. Div. Oct. 13, 2019) ("When a party continues performance of a contract after a breach has occurred, the party waives its right to sue for breach."); Knights Franchise Sys., Inc. v. P.C.P.S. Corp., 2009 WL 3526229, at *3 (D.N.J. Oct. 21 2009) ("It is axiomatic that when a party believes another contacting party has breached its contractual obligations, the injured party may either terminate the contract or continue to perform and sue for damages, but if the injured party continues to perform under the contract, it may only sue for damages

This principle is ultimately dispositive here.

Flaws in the reservation system (which, as noted, seem to have been fixed by 2018) may or may not have amounted to a breach of the 2016 franchise agreement.  If they did, that would potentially have given the Hotel Owner the right to terminate the agreement.  See Frank Stamato & Co., 4 N.J. at 21 (when there is a breach, "the injured party" may choose between "continuing performance or of ceasing to perform"); Knights Franchise Sys., Inc., 2009 WL 3526229, at *3 ("when a party believes another contacting party has breached" the contract, the "party may either terminate the contract or continue to perform and sue for damages").

But the Hotel Owner did not exercise that right.  Instead, it continued to operate for years under the franchise agreement.  This was its choice.

But having made it, the Hotel Owner cannot now double back.  The Hotel Owner cannot use the Hotel Franchisor's prior non-performance as a justification for its own decision to later walk away from the franchise agreement.  See Frank Stamato & Co., 4 N.J. at 21 (if a party choses to continue to perform after a breach, that acts as a "conclusive choice" which deprives the party of the right to use the breach as basis for terminating the contract); Knights Franchise Sys., Inc., 2009 WL 3526229, at *3 (if a party continues to perform after a second party's breach, the first party "may only sue for damages caused by the breach" and may not terminate the contract using the

---

caused by the breach, but it may no longer rely on that breach to excuse its own subsequent failure to perform contractual obligations."); see generally S&R Corp. v. Jiffy Lube Int'l, Inc., 968 F.2d 371, 376 (3d Cir. 1992) ("Under basic contract principles, when one party to a contract feels that the other contracting party has breached its agreement, the non-breaching party may either stop performance and assume the contract is avoided, or continue its performance and sue for damages."); Fuller Co. v. Brown Minneapolis Tank & Fabricating Co., 678 F. Supp. 506, 509-10 (E.D. Pa. 1987) ("[A] party cannot continue to perform under the contract and later be heard to say that the other party breached the agreement prior to the continued performance, and therefore, no contract existed.  By electing to continue its performance, [the defendant] remains bound by the terms of the contract.  Its only remedy for [the plaintiff's] alleged breaches of the contract is a claim for monetary damages."); cf. Marino v. Brightside Gardens of Mountainside, 2023 WL 6366013, at *6-7 (D.N.J. Sept. 29, 2023).

breach as an excuse); see generally S&R Corp., 968 F.2d at 376
("when one party to a contract feels that the other contracting
party has breached its agreement, the non-breaching party may
either stop performance and assume the contract is avoided, or
continue its performance and sue for damages").

But that is what the Hotel Owner seeks to do here.  The core
theory of the hotel reservations counterclaim is that the Hotel
Franchisor violated its obligations under the franchise
agreement --- and that as a result, years later, the Hotel Owner
was relieved of its own obligations under the agreement, even
though in the interim it had continued to perform under it.  New
Jersey law, as set out just above, forecloses this argument.

### 2.   Rewards Program

The Defendants' next counterclaim is that the Hotel Franchisor
breached the franchise agreement by failing to provide access to
a franchise-wide rewards program --- and that therefore the
Hotel Owner cannot be faulted for its own breach of the
agreement.  See Answer & Counterclaim ¶ 36-37; Memorandum in
Opposition at 15.

This is not persuasive for three reasons.

First, the 2020 release covers this counterclaim.  See Part
III.B.1.a above.  Disputes as to the rewards program "arose"
before the release was executed (and indeed those disputes
seemed to have been resolved by 2018).  See Casper Depo. 49:5-
12.

Second, under the principles of New Jersey law set out above,
see Part III.B.1.b, the Hotel Owner cannot contend that an
earlier breach of the franchise agreement, allegedly by the
Hotel Franchisor, relieved it (the Hotel Owner) of its
obligation to continue to perform under the agreement.

Third and finally, the Defendants contend that Section 3.4.3 of
the franchise agreement was breached.  See Memorandum in
Opposition at 15.  But the cited section requires the Hotel
Owner to "participate in the [hotel franchise] Rewards program
or any successor guest rewards or loyalty programs [the Hotel
Franchisor] determine[s] is appropriate and pay the Loyalty
Program Charge."  Mallett Affidavit, Exhibit A.  The Hotel
Franchisor could not have breached the franchise agreement by

failing to perform an obligation that belonged to the Hotel Owner.[23]

### 3.   Marketing

The Defendants' next counterclaim rests on the premise that the Hotel Franchisor breached the franchise agreement by not doing the marketing activities it promised to.   See Memorandum in Opposition at 10; Defendants' Responsive Statement to Plaintiff's Statement of Undisputed Material Facts ¶¶ 9-24.

But the marketing-focused counterclaim has the same problems as the others.

It is, first, barred by the 2020 release.   See generally Part III.B.1.a.

The Defendants complained about the Hotel Franchisor's marketing efforts from the first stages of the parties' relationship.   See Defendants' Supplemental Statement of Undisputed Material Facts ¶¶ 15-18; Declaration of Alexander Samardzich ¶¶ 15-20.   And the evidence is of disputes that run through March 2020, when the Hotel Franchisor allegedly stopped marketing activities in light of the emergence of COVID-19.   See Defendants' Supplemental Statement of Undisputed Material Facts ¶ 22; Declaration of Alexander Samardzich ¶ 23.

Bottom line: marketing counterclaims "arose" well before September 2020, when the release was executed.   The release therefore covered those claims, and they cannot be pressed here.[24]

---

[23]   The Defendants also cite more broadly to Section 3.4 of the franchise agreement, not just to Section 3.4.3.   See Memorandum in Opposition at 15.   But all of Section 3.4 concerns the Hotel Owner's obligations to participate in marketing programs, not the Hotel Franchisor's.   See Mallett Affidavit, Exhibit A § 3.4.1-3.4.2.

[24]   The marketing-focused counterclaim (as well as the reservation and rewards counterclaims) might potentially be on different footing if the evidence showed that aspects of it arose after the release.   But the closest the evidence gets to that is of dissatisfaction from the Defendants with one of the Hotel Franchisor's marketing-focused employees in 2020.   See Samardzich Depo. 53:13-17; Casper Depo. 62:2-63:13.   That person, though, started working for the Plaintiff around 6 months before the release was entered.   See Samardzich Depo.

Second, the marketing counterclaims run aground on the principles of New Jersey law set out above. See Part III.B.1.b.[25]

---

69:18-21. See generally Walker, 2016 WL 5934692, at *4 ("Once a properly supported motion for summary judgment has been made, the non-movant's burden is rigorous: he 'must point to concrete evidence in the record that supports each and every essential element of his case.'") (quoting Orsatti, 71 F.3d at 484).

[25] Two points.

First, it is not clear that a marketing-focused counterclaim could prevail on the merits, because: (a) it is not disputed that the Plaintiff undertook some marketing efforts, see Samardzich Depo. 76:5-21; 90:18-20; Defendants' Supplemental Statement of Undisputed Material Facts ¶ 15 ("It was clear from early discussions that [the Hotel Franchisor] was focused solely on social media advertising for some reason."); Declaration of Alexander Samardzich ¶¶ 15-16, and (b) under Section 4.4 it was for the Hotel Franchisor to "determine in our discretion: (i) the extent of such activities; (ii) the nature and type of media placement; (iii) the allocation (if any) among international, national, regional and local markets; and (iv) the nature and type of advertising copy, other materials and programs." Franchise Agreement § 4.4.1.

Second, at certain points the Defendants suggest that additional marketing promises were made, in "various conversations, emails, etc." See Defendants' Responsive Statement to Plaintiff's Statement of Undisputed Material Facts ¶¶ 9-24. But "the parol evidence rule prohibits the introduction of evidence that tends to alter an integrated written document." Conway v. 287 Corp. Center Assocs., 187 N.J. 259, 268 (2006). And the franchise agreement is integrated. See Franchise Agreement § 17.7.4. To be sure, there are various exceptions to the parol evidence rule. One applies when the oral evidence is used to argue that a contract is void due to fraud. See generally Timken Silent Automatic Corp., 119 N.J.L. at 503. That exception was in play above. See footnote 9. But not here. Oral statements that assertedly added marketing obligations to the franchise agreement do not purport to suggest anything about whether the franchise agreement itself is or is not void. Oral statements can also sometimes be used to clarify the meanings of an ambiguous contractual term. See generally, e.g., Conway v. 287 Corporate Ctr. Assoc., 187 N.J. 259, 269(2006). But Defendants press no arguments along these lines.

### 4.   Conclusion

To summarize: the Defendants' second set of counterclaims is based on the argument that the Plaintiff/Hotel Franchisor breached the franchise agreement based on reservation system, rewards program, and marketing issues.  But these counterclaims fail as a matter of law for the reasons discussed above.  The Hotel Franchisor's motion for summary judgment as to these counterclaims is therefore granted.

## IV.  Breach of Contract

Where things stand: the Defendants made two main arguments, framed as counterclaims, for why the Corporate Defendant/Hotel Owner was permitted to terminate the franchise agreement; those have been put to one side by the Court and are no longer part of the case.  See Part III.

The Court now considers whether the Plaintiff/Hotel Franchisor is entitled to summary judgment on its various breach of contract claims --- for breach of the franchise agreement, and also the guaranty and the note.

### A.   Franchise Agreement

To establish a claim for breach of contract, a plaintiff must provide proof of "a valid contract between the parties, the opposing party's failure to perform a defined obligation under the contract, and a breach causing the claimant to sustain[ ] damages." Nelson v. Elizabeth Bd. of Educ., 246 A.3d 802, 812 (N.J. Super. Ct. App. Div. 2021); see also Globe Motor Co. v. Igdalev, 225 N.J. 469, 482 (2016).

The franchise agreement was a valid contract between the Corporate Defendant/Hotel Owner and the Plaintiff/Hotel Franchisor.  See Plaintiff's Statement of Undisputed Material Facts ¶¶ 6-8; Defendants' Response to Plaintiff's Statement of Undisputed Material Fact ¶¶ 6-8; Mallett Affidavit, Exhibit A; Samardzich Depo. 26:2-5.[26]

The Hotel Owner stopped performing under the franchise agreement.  This was a breach of the agreement.  See Samardzich

---

[26]  The Defendants' arguments as to why the franchise agreement was not valid have been rejected by the Court.  See Part III.A.

Depo. 52:9-16; Mallett Affidavit, Exhibit F; Memorandum in Opposition at 4.[27]

And finally, the Plaintiff/Hotel Franchisor was damaged as a result of the breach.  For example, if the franchise agreement had not been terminated, it would have run until 2036, see Franchise Agreement § 5, and the Plaintiff would have been entitled until then to receive certain recurring fees.  See id. at §§ 7, 18.3.

In short: the undisputed evidence establishes that the Hotel Franchisor is entitled to summary judgment as to the Hotel Owner's liability for the breach of contract claim made in connection with the franchise agreement.  See Complaint ¶¶ 33-37.

   **B.   Guaranty**

Now take the Plaintiff's breach of contract claim for the guaranty.  See Complaint ¶¶ 52-53.  This claim runs against the Individual Defendant/Guarantor.

A guaranty is a contract that is linked to another contract, by which a party to the second contract (the guarantor) agrees to take on the obligations of a party to the first contract if it does not meet its obligations.  See Westville Land Co. v. Handle, 112 N.J.L. 447, 453 (N.J. 1934).  In the typical case, if the obligation established under the first contract is breached, and not satisfied through payment or performance, then the guarantor is on the hook, and becomes obligated.  See id.; see also Bonefish Cap., LLC v. Autoshred, LLC, 2022 WL 518021, at *10-12 (N.J. Super. Ct. App. Div. Feb. 22, 2022); Anabarasan v. 53-54 Palisades Hudson Assocs., LLC, 2012 WL 1108418, at *3-4 (N.J. Super. Ct. App. Div. Apr. 4, 2012); Daimler Trucks N. Am., L.L.C. v. Preziosi, 2011 WL 3557319, at *5 (N.J. Super. Ct. App. Div. Aug. 5, 2011); Ctr. 48 Ltd. Partnership v. May Dept. Stores Co., 810 A.2d 610, 616, 620, 622 (N.J. Super. Ct. App. Div. 2002); Garfield Trust Co. v. Teichmann, 95 A.2d 18, 22-23 (N.J. Super. Ct. App. Div. 1953).

Under the guaranty here, the Individual Defendant "guarent[eed] . . . [the Corporate Defendant's] obligations under the [franchise agreement]," and provided that "[u]pon default by

---

[27]  The Defendants' arguments as to why the Hotel Owner was allowed to breach the franchise agreement have been rejected by the Court.  See Part III.B.

[the Corporate Defendant] and notice from [the Plaintiff] [the Individual Defendant] will immediately make each payment and perform or cause [the Corporate Defendant] to perform, each unpaid or unperformed obligations of [the Corporate Defendant] under the [franchise agreement]." Guaranty at 1.[28]

As noted above, to establish breach of contract the Plaintiff must provide proof of "a valid contract between the parties, the opposing party's failure to perform a defined obligation under the contract, and a breach causing the claimant to sustain[ ] damages." Nelson, 246 A.3d at 812 (cleaned up).

There is no dispute that the guaranty is valid. The parties agree they entered and signed it. See Plaintiff's Statement of Undisputed Material Facts ¶¶ 31-34; Defendants' Response to Plaintiff's Statement of Undisputed Material Facts ¶¶ 31, 34.

The guaranty required the Guarantor "upon default" on the franchise agreement, and notice from the Plaintiff, to "immediately make each payment and perform or cause [the Hotel Owner] to perform, each unpaid or unperformed obligations of [the Hotel Owner] under the [franchise agreement]." Guaranty at 1.

As determined above, see Part IV.A, the Hotel Owner breached the franchise agreement, and did not pay damages to the Hotel Franchisor. This is a default. The Hotel Franchisor provided notice that the franchise agreement was breached, see Mallet Affidavit, Exhibit G,[29] and the Guarantor was then obligated to himself step up. See Guaranty at 1. None of this happened. See Plaintiff's Statement of Undisputed Material Facts ¶¶ 56-58, 67; Samardzich Depo. 55:23-56:3.

The Hotel Franchisor was damaged by this breach. If the guaranty had not been breached, the Hotel Franchisor would have been paid. See Part IV.B (discussing fees due through 2036).

Bottom line: the undisputed evidence is that the Hotel Franchisor is entitled to summary judgment as to the Guarantor's

---

[28] The guaranty also seems to cover the note. See Guaranty at 1. The Plaintiff's arguments, though, focus only on the obligations of the Individual Defendant/Guarantor under the franchise agreement. See Complaint ¶¶ 52-54.

[29] Neither party contends this notice was insufficient.

liability for the breach of contract claim made in connection with the guaranty. See Complaint ¶¶ 52-54.

### C.   Note

Finally, consider the Plaintiff's breach of contract claim as to the note. See Complaint ¶¶ 56-60.

A note is a "contract by the obligor to pay a debt." Cosme v. Khalil, 2023 WL 3886155, at *4 (N.J. Super. Ct. App. Div. June 8, 2023) (cleaned up); see also Depew v. Colton, 60 N.J. Eq. 454, 458 (E&A 1900); Carter v. Carter, 2014 WL 5431299, at *5 (N.J. Super. Ct. App. Div. Oct. 28, 2014).

Under the note, the Defendants jointly and severally owed the Plaintiff certain money. That money became "immediately due," Note at 1, if particular triggering events happened. One of those: "termination of the [f]ranchise [a]greement." Id. That happened. See Part IV.A; Mallett Affidavit, Exhibit F. But payment under the note was not made to the Plaintiff.

Did this amount to a breach of contract?

Under New Jersey law, a breach of contract claim based on a note is analyzed under the same basic three-part framework (valid contract, failure to perform, damages) as other breach of contract claims. See Cosme, 2023 WL 3886155, at *5; Sivantos, Inc. v. NuTech Hearing, LLC, 2019 WL 2423605, at *2 (D.N.J. June 6, 2019); Sundholm v. eSuites Hotels LLC, 2014 WL 5449975, at *8 (D.N.J. Oct. 27, 2014); Jackson Hewitt, Inc. v. Dupree-Roberts, 2013 WL 4039021, at *3 (D.N.J. Aug. 7, 2013).

Here, these elements are satisfied.

First, the note is valid. The Defendants make no argument that it is not. See Memorandum in Opposition 15-17. And the parties agree they entered the note. See Plaintiff's Statement of Undisputed Material Facts ¶¶ 35-37; Defendants' Response to Plaintiff's Statement of Undisputed Material Facts ¶¶ 35-37.

Second, there was no performance. Given the termination of the franchise agreement, the Defendants were required to "immediately" pay the outstanding note balance to the Plaintiff. They did not. See Plaintiff's Statement of Undisputed Material

Facts ¶¶ 68-70; Defendants' Response to Plaintiff's Statement of Undisputed Material Facts ¶¶ 68-70.[30]

Third, there are damages.  As indicated, the Plaintiff has not been paid under the note.  See Memorandum in Opposition 15-17; Plaintiff's Statement of Undisputed Material Facts ¶¶ 68-70; Defendants' Response to Plaintiff's Statement of Undisputed Material Facts ¶¶ 68-70; Samardzich Depo. 57:5-23, 59:23-60:2.

In sum: on the undisputed evidence, the Plaintiff is entitled to summary judgment as to liability on its breach of contract claim made in connection with the note.  See Complaint ¶¶ 56-60.

**V.    Damages**

Given the breaches of contract discussed above, see Part IV, the Plaintiff argues it is entitled to summary judgment as to three types of damages.  See Motion for Summary Judgement at 9.

The Court addresses each in turn.

**A.    Fees**

The Plaintiff first seeks certain unpaid fees.  These had been building up under the franchise agreement and are alleged to have been due and owing as of the moment the Corporate Defendant walked away from the agreement.  See Motion for Summary Judgement at 10.

The Plaintiff moves for summary judgment as to these fees.

The motion is denied, because there is a factual dispute as to the fees.  There is evidence they were not paid.  See Mallett Affidavit ¶¶ 45-46, Exhibit H.  And there is evidence they were. See Samardzich Depo. 56:19-57:3, 61:1-6.

**B.    Note**

The Plaintiff moves for summary judgement as to the money it is owed under the note.

But this motion is also denied.  Among other things, how much is owed depends on when the hotel was opened.  See Note at 1 (on "each anniversary of the Hotel's Opening Date, one-twentieth of the original principal amount will be forgiven without

---

[30]  The Defendants argue that the Plaintiff has failed to mitigate damages on the note because they have not agreed to settle the matter.  See Memorandum in Opposition at 15-17.  But they do not dispute that payment has not actually been made.

payment"). And there is a factual dispute as to that. <u>Compare</u>
Defendants' Supplemental Statements of Material Facts ¶ 1;
Samardzich Depo. 57:5-22, 59:12-15 (hotel opened in 2016) <u>with</u>
Mallett Affidavit, Exhibit D (hotel opened in 2017).

### C.   **Liquidated Damages**

Next, focus on the liquidated damages that are laid out in the
franchise agreement.[31]  These become due if the franchise
agreement is terminated. <u>See</u> Franchise Agreement § 12.1.   It
has been here. <u>See</u> Part IV.A.

The Plaintiff moves for summary judgment on its claim for
liquidated damages, <u>see</u> Motion for Summary Judgement at 10-13
and the Defendants oppose the motion. <u>See</u> Memorandum in
Opposition at 17-19.

Under New Jersey law, the Defendants have an uphill climb.

"[L]iquidated damages provisions in a commercial contract
between sophisticated parties are presumptively reasonable and
the party challenging the clause bears the burden of proving its
unreasonableness." <u>Metlife Cap. Fin. Corp.</u> v. <u>Washington Ave.</u>
<u>Assocs. L.P.</u>, 159 N.J. 484, 496 (1999).

That is this case. The franchise agreement is a commercial
contract. And the parties to it are sophisticated. The Hotel
Franchisor is a part of a large international hotel group. <u>See</u>
Brewster Certification, Exhibit I. The Hotel Owner is a limited
liability company managed by the Guarantor. <u>See</u> Plaintiff's
Statement of Undisputed Material Fact ¶ 2; Franchise Agreement
at 29. He had been involved in the hotel industry since 1993,
and had worked on eight prior hotel projects with franchise
agreements. <u>See</u> Samardzich Depo. 15:10-13, 16:21-17:2.

To carry their "burden," the Defendants make two arguments. But
these are not persuasive.

<u>First</u>, the Defendants note that liquidated damages can sometimes
be deemed unreasonable if they are badly out of whack with the
actual underlying damages. <u>See</u> Memorandum in Opposition at 19;
<u>see generally</u> <u>Wasserman's Inc.</u> v. <u>Middletown</u>, 137 N.J. 238, 251
(1994). Given this background principle, the Defendants argue
they should have a chance to show what the actual damages to the

---

[31]  The franchise agreement specified that liquidated damages are
to be calculated based on a formula, set out in Section 12.1 of
the agreement.

Plaintiff were for breach of the franchise agreement.  See
Memorandum in Opposition at 18-19.

But the Defendants had the opportunity they now say they want.
During discovery, large volumes of documents were exchanged, and
many witnesses were deposed.  But discovery is now completed.
The Defendants could have developed evidence on the Plaintiff's
actual damages.  But they apparently opted not to.[32]  See id.  At
this stage of the litigation, the Defendants need to put forth
evidence, not to say they want to.

Second, the Defendants argue that, per one of their witnesses,
liquidated damages in this context are unreasonable because they
are based on average daily hotel room rates.  See Memorandum in
Opposition at 18-19.  But average daily hotel room rates are not
the basis of the franchise agreement's liquidated damages
clause.  The liquidated damages clause is based on a calculation
that uses the average recurring fees per month over the last 24
months.  See Franchise Agreement § 12.1.  And those fees are
primarily set based on a percentage of monthly gross room
revenue.  See id. at § 7, Schedule C.[33]

In short: it is the Defendants' "burden" to show the liquidated
damages clause is unreasonable.  Metlife Cap. Fin. Corp., 159
N.J. at 496.  They have not carried it.


Accordingly, the Plaintiff's motion for summary judgment is
granted as to their request for liquidated damages.  The precise
amount of those damages must be calculated and has been by the
Hotel Franchisor.  If the calculation is disputed, further
motions may be necessary.

### D.   **Prejudgment Interest**

The Plaintiff also seeks summary judgement as to prejudgment
interest on all three sorts of damages it has sought.  But the
Court has denied the Plaintiff's motion for summary judgment on
two sorts of damages, see Part V.A & V.B, and there is a

---

[32]  Indeed, the Defendants put in evidence as to their own
damages, on the assumption they would prevail on their
counterclaims.  See Brewster Certification, Exhibit G.

[33]  It seems possible the Defendants are pressing an argument on
this point that did not come out quite as clearly as it might
have.  If they believe that is the case, the Defendants will be
permitted to file a short letter, as set out in the Court's
order of today.

possible loose end on the third.  See Part V.C.  Accordingly, the Court denies the motion for prejudgment interest on damages as unripe, without prejudice to it being renewed as may be necessary later.

## VI.  **Attorneys' Fees**

Finally, the Plaintiff moves for summary judgment as to attorneys' fees.

The franchise agreement and note each suggest that attorneys' fees may potentially be available here.  See Franchise Agreement § 17.4; Note at 2.

But this issue is not yet ripe for decision.  For example, the agreements say attorneys' fees may be awarded to the "prevailing party."  See Franchise Agreement § 17.4.  But it makes more sense to determine who that is when the case is fully concluded.[34]

The Court denies the motion for attorneys' fees without prejudice to it being renewed at an appropriate time.

## VII. **Conclusion**

As discussed above, the Plaintiff's motion for summary judgement, see Docket Entry 53, is granted in part and denied in part.


IT IS on this 28th day of March, 2024, so **ORDERED**.

_____
Michael E. Farbiarz, U.S.D.J.

---

[34]  In addition, the Court's decision here leaves open a number of issues, and further fees may be incurred to resolve them.